IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BOBBI BOLTON,

    Plaintiff,

vs.                  CASE NO. 4:03cv307-RH/WCS

UNITED STATES OF AMERICA,

    Defendant.
_____/

## DEFENDANTS' FIRST REQUEST FOR ADMISSIONS

COMES NOW the Defendant, by and through counsel, Assistant United States Attorney, Robert D. Stinson, pursuant to Fed. R. Civ. P. 36, and requests Plaintiff to admit the following matters. If you deny any statement, state the facts on which your denial is based.

1. Admit that Bobbie Bolton was incarcerated at the Federal Correctional Institution, Tallahassee, Florida from October 30, 2001 through October 1, 2002.

2. Admit that Bobbie Bolton shared a cell at FCI Tallahassee with inmate Natasha Johnson during the period from May 9, 2002 through August 7, 2002.

3. Admit that inmate Celeste Wells was housed in the same unit as plaintiff Bobbie Bolton at FCI Tallahassee from July 26,

2002 through August 7, 2002.

4. Admit that inmates at FCI Tallahassee can communicate with Bureau of Prisons staff through various means.

5. Admit that inmates at FCI Tallahassee can communicate with Bureau of Prisons staff in writing.

6. Admit that inmates at FCI Tallahassee can communicate with Bureau of Prisons staff verbally.

7. Admit that Bureau of Prisons staff at FCI Tallahassee are available to inmates 24 hours a day.

8. Admit that from December 12, 2001 through October 1, 2002 plaintiff Bobbie Bolton's case manager was T. Williams.

9. Admit that plaintiff Bobbie Bolton was assigned a Unit Team that consisted of a Case Manager, Correctional Counselor and a Unit Manager.

10. Admit that plaintiff Bobbie Bolton had the ability to make contact with and communicate with members of her Unit Team while she was incarcerated at FCI Tallahassee.

11. Admit that plaintiff Bobbie Bolton was involved in the Residential Drug Treatment program at FCI Tallahassee.

12. Admit that Drug Treatment Program staff are available to inmates in the unit where the Residential Drug Treatment program is conducted at FCI Tallahassee.

13. Admit that inmates can speak to prison staff about issues of concern during mainline at the noon meal.

14. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons staff member that Officer Linton was making inappropriate comments to her.

15. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons staff member that Officer Linton made inappropriate physical contact with her.

16. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons staff member that Officer Linton touched her in any sexual manner.

17. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons staff member that Officer Linton had sexual intercourse with her.

18. Admit that the Bureau of Prisons Standards of Employee Conduct prohibits staff from engaging in sexual contact with inmates.

19. Admit that the Bureau of Prisons Standards of Employee Conduct prohibits staff from engaging in sexual intercourse with inmates.

20. Admit that plaintiff Bobbie Bolton attended the Admission and Orientation program at FCI Tallahassee in early November 2001.

21. Admit that during the Admission and Orientation program at FCI Tallahassee, inmate Bobbie Bolton was advised of steps to take to report improper actions toward her by staff.

22. Admit that prior to filing her administrative tort claim, plaintiff Bobbie Bolton never wrote to any Bureau of Prisons staff member complaining that Officer Linton had sexual intercourse with her.

23. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons staff member that Officer Linton said "I want to fuck you" to her in July 2002.

24. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons staff member that in July 2002 Officer Linton stated "you are a fine sister; a girl like you can make a young man get in trouble".

25. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that Officer Linton would enter her cell and watch her while she was on the toilet.

26. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that Officer Linton entered the TV Room where she was cleaning on July 15, 2002, and asked her to draw the blinds so they could have sex.

27. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that on July 15, 2002, Officer Linton stated "I want to fuck you."

28. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that on July 15, 2002, Officer Linton entered inmate Bolton's cell and threatened her.

29. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that on July 21, 2002, Officer Linton entered inmate Bolton's cell and stated that he was going to "fuck" her or make sure she went to the Special Housing Unit.

30. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that on July 21, 2002, Officer Linton had sexual intercourse with her.

31. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never notified any Bureau of Prisons employee that on July 29, 2002, Officer Linton had sexual intercourse with her.

32. Admit that prior to August 7, 2002, plaintiff Bobbie Bolton never provided the physical evidence of Officer Linton's sexual release to any Bureau of Prisons staff member.

33. Admit that once plaintiff Bobbie Bolton asked to speak to the Special Investigative Agent that she saw him the same day.

34. Admit that once plaintiff Bobbie Bolton told Special Investigative Agent George Williams that she was raped, that she was interviewed by the FBI on the very same day.

35. Admit that plaintiff Bobbie Bolton did not provide Special Investigative Agent George Williams, the FBI or the Officer of Inspector General Agent the underwear she claims that Officer Linton ejaculated on during the sexual encounter of July 29, 2002.

36. Admit that plaintiff Bobbie Bolton held physical evidence of the purported rape in her possession for at least seven days before she advised any Bureau of Prisons staff member of the existence of the semen-stained nightgown.

37. Admit that SIA George Williams immediately placed plaintiff Bobbie Bolton in the Special Housing Unit at FCI Tallahassee upon her request for protection on August 7, 2002.

38. Admit that SIA George Williams took a statement from plaintiff Bobbie Bolton concerning the alleged rape by Officer Linton on the very day she notified him of the situation.

39. Admit that on August 7, 2002, SIA George Williams asked for the semen-stained nightgown that plaintiff Bobbie Bolton retained.

40. Admit that on August 7, 2002, SIA George Williams obtained the semen-stained nightgown that plaintiff Bobbie Bolton had retained.

41. Admit that a piece of the semen-stained nightgown that plaintiff Bobbie Bolton provided to SIA George Williams on

August 7, 2002, was missing when Mr. Williams obtained the nightgown.

42. Admit that plaintiff Bobbie Bolton cut a piece out of the semen-stained portion of the nightgown before she provided it to SIA George Williams on August 7, 2002.

43. Admit that plaintiff Bobbie Bolton sent the cut piece from the semen stain on the nightgown to an attorney prior to reporting the alleged rape to Bureau of Prisons staff.

44. Admit that plaintiff Bobbie Bolton waited until she was advised the cut piece from the nightgown was received by her attorney prior to reporting the alleged rape to Bureau of Prisons staff.

45. Admit that plaintiff was interviewed by FBI Agent Patrick Sanford on August 7, 2002 concerning her allegations that Officer Linton raped her.

46. Admit that on August 7, 2002, plaintiff told FBI Agent Patrick Sanford that she allowed Officer Linton to have sexual intercourse with her on July 21 and July 29, 2002 because she believed he could have her placed in segregation, removed from the drug treatment program, or could take away her transfer to a halfway house.

47. Admit that plaintiff Bobbie Bolton flirted with Officer Linton.

48. Admit that plaintiff Bobbie Bolton asked Officer Linton to bring in a condom so they could have sexual intercourse.

49. Admit that plaintiff Bobbie Bolton never came into physical contact with Officer Linton at FCI Tallahassee after August 6, 2002.

50. Admit that plaintiff Bobbie Bolton never had verbal communication with Officer Linton at FCI Tallahassee after August 6, 2002.

51. Admit that the sexual encounter between plaintiff Bobbie Bolton and Officer Linton occurred in the Unit Officer's bathroom.

52. Admit that plaintiff's cellmate, Natasha Johnson, stood outside the office door as a lookout while plaintiff Bobbie Bolton engaged in voluntary sexual intercourse with Officer Linton.

53. Admit that plaintiff Bobbie Bolton arranged to have sexual intercourse with Officer Linton in order to set up litigation against the Bureau of Prisons.

54. Admit that plaintiff Bobbie Bolton's halfway house placement was delayed due to pending charges rather than any action by Officer Linton.

55. Admit that on July 7, 1998, plaintiff Bobbie Bolton was charged in the Southern District of Ohio with possession of 15 or more counterfeit devices in violation of 18 U.S.C.

1029(a)(3), 371, and 2.

56. Admit that on December 4, 1998, venue for the Souther Ohio charges was changed to the Western District of Missouri.

57. Admit that on December 4, 1998, plaintiff Bobbie Bolton was charged in the Western District of Missouri with use of a counterfeit credit card and possession of device making equipment in violation of 18 U.S.C. 1029(a)(2), (a)(4), (b)(1) and (c)(2).

58. Admit that on January 4, 1989, plaintiff Bobbie Bolton pleaded guilty on the charges of possession of a counterfeit credit card and possession of device making equipment.

59. Admit that plaintiff Bobbie Bolton used counterfeit credit cards to defraud several merchants in Dayton, Ohio between May 28 and 30, 1998.

60. Admit that plaintiff Bobbie Bolton used counterfeit credit cards to make fraudulent purchases in four states in May of 1998.

61. Admit that plaintiff Bobbie Bolton used the alias Tracy Callaway to rent a hotel in the Dayton metropolitan area on May 28, 1998, and that she used a counterfeit credit card to pay the bill.

62. Admit that on May 28, 1998, plaintiff Bobbie Bolton used the alias Lashay Carrera to rent a U-Haul truck and storage space and that she used a counterfeit credit card to pay for

them.

63. Admit that on May 28, 1998, plaintiff Bobbie Bolton used a counterfeit credit card in the name of Lashay Carrera-Teama to purchase $1957.75 in goods from an electronics store.

64. Admit that on May 30, 1998, plaintiff Bobbie Bolton used a counterfeit credit card in the name of Betty Boston to purchase $1938.18 in goods from an electronics store.

65. Admit that plaintiff Bobbie Bolton knew the credit cards she used to make purchases on May 28 and 30, 1998 were fraudulent.

66. Admit that plaintiff Bobbie Bolton gave a false name to the Dayton police when she was arrested on May 30, 1998.

67. Admit that plaintiff Bobbie Bolton was seen discarding a wallet prior to her arrest on may 30, 1998.

68. Admit that the wallet plaintiff Bobbie Bolton discarded prior to her arrest on May 30, 1998, contained four driver's licenses bearing her photograph with different names.

69. Admit that the wallet plaintiff Bobbie Bolton discarded prior to her arrest on May 30, 1998, contained 20 altered credit cards.

70. Admit that on July 8, 1998, plaintiff Bobbie Bolton was arrested in Overland Park, Kansas, with an embossing machine, 15 blank credit cards, five social security cards, six blank California birth certificates and numerous pages

with Visa and MasterCard numbers.

71. Admit that on February 21, 1989, plaintiff Bobbie Bolton pled guilty to passing bad checks in Randolph County, Missouri.

72. Admit that on March 1, 1989, plaintiff Bobbie Bolton pled guilty to passing bad checks in Cooper County, Missouri.

73. Admit that on April 14, 1998, plaintiff Bobbie Bolton pled guilty to passing bad checks in Boone County, Missouri.

74. Admit that on April 24, 1998, plaintiff Bobbie Bolton pled guilty to passing bad checks and fraudulently stopping payment on a check in Cole County, Missouri.

75. Admit that on December 19, 1995, plaintiff Bobbie Bolton pled guilty to auto theft in Harris County, Texas.

76. Admit that on March 8, 1995, plaintiff Bobbie Bolton pled guilty to receiving stolen property and forgery in Cole County, Missouri.

77. Admit that on March 8, 1995, plaintiff Bobbie Bolton pled guilty to stealing in Cole County, Missouri.

78. Admit that on October 14, 1997, plaintiff Bobbie Bolton pled guilty to two counts of fraudulent use of a credit card in Jackson County, Missouri.

79. Admit that on December 3, 1998, plaintiff Bobbie Bolton pled guilty to theft in Johnson County, Kansas.

80. Admit that plaintiff Bobbie Bolton attended one semester of

law school at Texas Southern University in 1991.

81. Admit that on October 27, 2003, plaintiff Bobbie Bolton pled guilty to misuse of a social security number and fraud with identification documents in Case Number 4:03CR139CEJ in the United States District Court for the Eastern District of Missouri.

82. Admit that on January 23, 2004, plaintiff Bobbie Bolton was sentenced to serve 37 months incarceration in Case Number 4:03CR139CEJ in the United States District Court for the Eastern District of Missouri.

83. Admit that on October 2, 2002, plaintiff Bobbie Bolton was placed in a community corrections center in St. Louis, Missouri.

84. Admit that on December 8, 2002, plaintiff Bobbie Bolton escaped from the community corrections center in St. Louis, Missouri.

85. Admit that Bureau of Prisons Psychology staff were available to plaintiff Bobbie Bolton at FCI Tallahassee.

86. Admit that plaintiff Bobbie Bolton could have spoken to Bureau of Prisons Psychology staff at any time between July 1 and August 7, 2002.

87. Admit that plaintiff Bobbie Bolton never advised a Bureau of Prisons Psychology staff member at any time between July 1 and August 7, 2002 that Officer Linton was behaving in any

inappropriate manner.

88. Admit that subsequent to August 7, 2002, plaintiff Bobbie Bolton met with Bureau of Prisons Psychology staff on several occasions.

89. Admit that a seven to 14 day delay in reporting an alleged rape can result in loss of physical evidence to support the allegation.

90. Admit that plaintiff Bobbie Bolton had access to medical care at FCI Tallahassee.

91. Admit that plaintiff Bobbie Bolton was seen by medical staff at FCI Tallahassee after August 7, 2002, when she first reported the alleged rape.

92. Admit that medical staff at FCI Tallahassee conducted a variety of medical tests for plaintiff after she reported the alleged rape on August 7, 2002.

93. Admit that plaintiff Bobbie Bolton was given an Introduction to Psychology Services handbook during Admission and Orientation at FCI Tallahassee on November 1, 2001.

94. Admit that plaintiff Bobbie Bolton was given a handbook entitled "Sexual Abuse/Assault Intervention and Prevention, An Overview for Offenders" during Admission and Orientation at FCI Tallahassee in early November 2001.

> Respectfully submitted,
>
> GREGORY R. MILLER
> United States Attorney
>
> s/ *Robert D. Stinson*
> ROBERT D. STINSON
> Assistant U.S. Attorney
> Fla. Bar No. 319406
> 111 North Adams St., 4th Floor
> Tallahassee, Florida 32301
> 850/942-8430

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed electronically on this 2nd day of April, 2004, and that James V. Cook, Attorney for Plaintiff, is registered to be notified by the CM/ECF electronic mail system.

> s/ *Robert D. Stinson*
> Attorney