IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

BOBBI BOLTON,

        Plaintiff,

vs.                                              CASE NO. 4:03cv307-RH/WCS

UNITED STATES OF AMERICA,

        Defendant.
_____/

## UNITED STATES OF AMERICA'S TRIAL BRIEF COMBINED WITH PROPOSED FINDING OF FACTS AND PROPOSED OPINION

**Findings of Fact**

Defendant Jeffrey Linton is a former correctional officer at the Federal Correctional Institution, Tallahassee, Florida (hereinafter "FCI Tallahassee). He transferred to FCI Tallahassee from the Federal Correctional Institution, Edgefield, South Carolina, on June 3, 2001. At the time of the incidents giving rise to this complaint, defendant Linton had been employed by the Bureau of Prisons since November 1998.

As a condition of Linton's employment, he underwent an integrity interview and background investigation during his first year of employment. Followup investigations are conducted every five years. There were no issues discovered during Linton's investigations that gave the Bureau of Prisons any reason to believe Linton should not work in a correctional environment.

All Bureau of Prisons staff receive at least five weeks of introductory training, both at

their facility of employment and at the Federal Law Enforcement Training Center in Glynco, Georgia, within their first few weeks of work. Both components of this training include sessions on the Standards of Employee Conduct, sexual activity of inmates, and the special issues that arise in dealing with female offenders. Upon transfer to FCI Tallahassee, Linton underwent another training session concerning the management of female offenders. Every year, Linton underwent at least 40 hours of annual refresher training where issues concerning staff misconduct were addressed.

Plaintiff Bobbie Bolton was incarcerated at FCI Tallahassee from October 30, 2001 through October 1, 2002. Bolton was housed in F-Unit at FCI Tallahassee, and participating in the Residential Drug Treatment program. She asserts in her complaint that she was sexually assaulted on July 21 and 29, 2002, by Officer Linton. Plaintiff alleges that between July 1 and 29, 2002, Officer Linton made numerous sexually charged comments to her prior to the first and the second sexual encounter. Plaintiff never reported Officer Linton's comments or actions to any Bureau of Prisons employee until August 7, 2002. Plaintiff admits that she had access to numerous other Bureau of Prisons employees during that time, including but not limited to her Unit Team, various Psychology staff and Drug Treatment staff, Lieutenants, the Captain, all prison department heads, and various other correctional officers. Correctional staff are on duty in her housing unit 24-hours a day, seven days a week. Plaintiff admits that Officer Linton only worked in her housing unit two days a week, from 4:00 p.m. until midnight.

Like all inmates at FCI Tallahassee, plaintiff went through admission and orientation when she arrived at the facility. Among other things, she was given a copy of the Sexual Abuse/Assault Prevention and Intervention handbook, and was advised of several ways she

could report improper behavior by staff toward her or other inmates.

Plaintiff alleges that Officer Linton made a variety of sexually suggestive comments to her on the evenings he was assigned to her housing unit between July 1 and 29, 2002. She states that she tried to rebuff these comments, but that Officer Linton was persistent. Plaintiff asserts that on July 21, 2002, Officer Linton entered her cell in the early evening and told her that if she did not have sex with him he would cause her to go to the Special Housing Unit. Plaintiff alleges she was afraid of what would happen to her, so she allowed Officer Linton to have sexual intercourse with her. Plaintiff did not report the comments or sexual activity to any Bureau of Prisons staff member on this or the following day.

Plaintiff further alleges that Officer Linton entered her cell again late in the evening on July 29, 2002. Again, she agreed to engage in sexual intercourse with Officer Linton. At the conclusion of the act, seminal fluid from Officer Linton was on her clothing. She kept that clothing, sending a part of the stain to her attorney. Plaintiff did not report the comments or sexual activity to any Bureau of Prisons staff member on this evening or the following day.

On July 31, 2002, plaintiff approached Wynette Kirby-Brown, a Drug Treatment Specialist at FCI Tallahassee, with a "hypothetical question." She asked Ms. Brown what impact going to the Special Housing Unit because an inmate was assaulted would have on the inmate's ability to complete the drug program. Ms. Brown told Bolton that such a determination would turn on several factors, including how far along the inmate was and why the inmate went to the Special Housing Unit. When asked by Ms. Brown, plaintiff stated the question was just a hypothetical and was not about her.

On August 7, 2002, plaintiff spoke to Ms. Brown again, this time stating that she had been raped by a staff member and wanted to speak to the institution investigator. Ms. Brown escorted plaintiff to the office of George Williams, the Special Investigative Agent at FCI Tallahassee. Plaintiff told Ms. Brown and Agent Williams that she was raped by Officer Linton on July 21 and 29. She provided the garment containing Officer Linton's seminal fluid to Agent Williams.

Agent Williams advised plaintiff of the availability of medical and mental health care and of how to obtain such care. He further advised her that he would refer the matter to the FBI for investigation. Plaintiff requested protection and Agent Williams had her admitted to the Special Housing Unit in order to facilitate her request.

Later that day, Agent Williams contacted Special Agent Pat Sanford of the FBI. Agent Sanford went to FCI Tallahassee on the same day and interviewed plaintiff. During the interview, plaintiff reiterated the story as she had given it to Agent Williams - she was sexually assaulted by Officer Linton on July 21 and 29, but did not report it until August 7, 2002.

On August 8, 2002, when Officer Linton reported to work, he was directed to see Agent Williams and Special Agent Sanford. At that time, Officer Linton admitted to engaging in sexual intercourse with plaintiff, but asserted it only occurred on one occasion, in the Officer's bathroom rather than in plaintiff's cell. Officer Linton immediately resigned. In May 2003, Linton was charged in a one count information with Sexual Abuse of a Ward in violation of 18 U.S.C. §2243(b). Officer Linton pled guilty to the charge and was sentenced on August 6, 2003.

**Proposed Opinion and Conclusions of Law**

While plaintiff attempts to raise new issues in various subsequent papers, there are only two claims against the United States in the complaint. In Claim III, plaintiff alleges that the United States, through the Bureau of Prisons, was negligent in its hiring, training and supervision of Officer Linton, which was the proximate cause of his sexually assaulting her. In Claim IV, plaintiff alleges that the United States is liable for the battery committed by Officer Linton. Both claims against the United States must fail.

    *1.    Battery claim against the United States*

Plaintiff asserts her claims against the United States under the Federal Tort Claims Act, 28 U.S.C. §1346(b) and §2671 et seq. Under the doctrine of sovereign immunity, the United States is exempt from suit unless it consents to be sued. Dalehite v. United States, 346 U.S. 15, 30 (1953). The jurisdiction of the federal courts is limited to the extent of that consent. FDIC v. Meyer, 510 U.S. 471, 475 (1994). Subject to certain exceptions, the FTCA waives sovereign immunity from suit in federal courts for the negligent actions of its employees. Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997). In order for the waiver to take effect, the employee must have been acting within the "scope of his office or employment," and under circumstances in which the United States, if a private person, would be liable to the claimant under the law of the state where the act or omission occurred. Autery v. United States, 992 F.2d 1523, 1526 (11th Cir. 1993).

Under Florida law, an employee's conduct is within the scope of his employment where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the

conduct is activated at least in part by a purpose to serve the master. Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992), Iglesia Christina La Casa del Senor Inc. v. L.M., 783 So.2d 353, 357 (3 Fla. 3d DCA 2001)(pastor who sexually abused minor is not within scope), Sussman v. Florida E. Coast Props., Inc., 557 So.2d 74, 75-6 (Fla. 3d DCA 1990)(employee picking up birthday cake for co-worker is outside the scope). The question of whether an employee is within the scope of their employment is a question of law where there is no factual dispute. Johnson v. Gulf Life Ins. Co., 429 So.2d 744, 746 (Fla. 3d DCA 1983).

The "course and scope of employment" test for liability of the private and the public employer are essentially the same. Hennagan v. Dep't of Highway Safety and Motor Vehicles, 467 So.2d 748, 750 (Fla 1st DCA 1985). Generally, an employer is liable for the wrongful act of his employee that causes injury to another if the wrongful act is done while the employee is acting within the apparent scope of his employment, even if the wrongful act constitutes a crime or was otherwise not authorized (or was forbidden) by the employer. Id. "However, an employee is not acting in the scope of employment if it can be found that the employee has 'stepped away' from the employer's business at the time of the infliction of the tort and that the motive was unrelated to the employee's duties, but rather was in furtherance of the employee's interests; then, the master cannot be held liable for the servant's act." Id., quoting Martin v. United Securities Service, Inc., 373 So.2d 720 (Fla. 1st DCA 1979). Stated another way, the issue is "whether the employee was doing what his employment contemplated." Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992)(internal quotations omitted)(AUSA not in scope when leaked information about ongoing investigation to news media).

Under these tests, it is apparent the Officer Linton was acting outside the scope of his

employment when he engaged in sexual intercourse with plaintiff.

Linton was employed by the Bureau of Prisons to provide for the safety and security of inmates housed at FCI Tallahassee. He was provided a variety of training as to his duties and responsibilities which included, among other things, general supervision of all inmates housed within his unit, making rounds through the unit to ensure compliance with rules and regulations, searching for contraband, maintaining accountability for the inmates and ensuring that necessary security checks are conducted. He was specifically instructed that staff are not to engage in sexual contact with inmates, and that such behavior violated agency policy and federal law. Assuming the facts are as plaintiff alleges, instead of carrying out his mandated duties, Linton "stepped away" from those duties and engaged in sexual activity with plaintiff. He was not hired to engage in sexual activity with inmates - he was hired to provide for their safety and security. Clearly Linton's conduct was not of the kind he was hired to perform.

With respect to the location component of the test, the actions occurred on government property during the hours when Linton was on duty. However, this will generally be the case in matters relating to sexual abuse of federal prisoners, as they are generally confined to prisons for a determinate period of time absent some unusual circumstance (such as temporary transfer to a local hospital for medical treatment). Thus, while the acts that caused the injury did occur at the government facility while the employee was on duty, this is but one factor to be considered.

Next we look to the reason for the conduct. For an employee to be within the scope, the conduct must be motivated by some intent to serve the master's purpose, not the personal interest of the employee. It is difficult to imagine any action that can be more personal in nature than engaging in sexual activity. There is absolutely no connection between Linton's duties as a

7

correctional officer and his actions in engaging in sexual intercourse with plaintiff.  See Flechsig v. United States, 991 F.2d 300, 303 (6th Cir. 1993)(when correctional officer engages in sexual activity with inmate "it would be impossible to assert that he was actuated in any way by the purpose of serving the Bureau of Prisons").

Therefore, I find that Linton was not acting within the scope of his employment at the time he engaged in sexual intercourse with the plaintiff.  Any tortious conduct committed by a federal employee acting outside the scope of their employment is barred by the FTCA.  Sheridan v. United States, 487 U.S. 392, 401 (1988).   Thus, the FTCA does not apply, and the United States is not liable for his actions with respect to the alleged battery.  Therefore, Claim IV fails for lack of subject matter jurisdiction.

  2.  *Negligence claim against the United States*

Similarly, I find that negligence claims against the United States must fail because plaintiff has failed to meet her burden of proof.

The United States' waiver of sovereign immunity under the FTCA is subject to several exceptions.  28 U.S.C. §2680.  The discretionary function exception provides that the United States shall not be liable for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused."  28 U.S.C. §2680(a).  If this exception applies, the FTCA claim "must be dismissed for lack of subject matter jurisdiction."  Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).

The Supreme Court set out a two-part test for determining whether the discretionary function exception bars suit against the United States in a given case. Berkovitz v. United States,

486 U.S. 531, 536 (1988); United States v. Gaubert, 499 U.S. 315, 322 (1991). To establish the application of the discretionary function exception, it must be shown that (1) "the action is a matter of choice for the acting employee" and (2) "the judgment is of the kind that the discretionary function was designed to shield." Berkovitz, 486 U.S. at 536. The second prong of the test applies "only to conduct that involves the permissible exercise of policy judgement." Id. It does not apply where a statute, regulation or policy prescribes a mandatory course of action for the employee to follow. Id. at 539, Gaubert 499 U.S. at 324 ("if the employee violates [a] mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy"). The court should not look to the subjective intent of the employee, or whether the employee "actually weighted social, economic, and political policy considerations before acting." Ochran v. United States, 117 F.3d 495, 500 (11th Cir. 1997).

Discretion can still exist even if the officials must abide by a general rule. Cohen, 151 F.3d at 1342 ("[E]ven though a statues or regulation imposes a general duty on a government agency, the discretionary function exception may still apply if the agency retains sufficient discretion in fulfilling that duty."); see also Ochran, 117 F.3d at 500 (same). (AG Guidelines direct AUSA to provide reasonable protection for a victim who has been threatened but do not specify how the protection is to be provided)

Discretionary conduct is not confined to the policy or planning level, operational decisions can also be discretionary. Gaubert at 325; Cohen, 151 F.3d at 1342("the mere fact a government official performs an action at the operational level (as opposed to the planning level) does not remove that official's action from the discretionary function exception."); Ochran, 117

9

F.3d at 505-6 (same); Autery, 992 F.2d at 1527 (same).

Once an assertion of discretionary function has been raised and proved, there is no need to analyze the government's duty to act. Monzon v. United States, 253 F.3d 567, 570 n.2 (11th Cir. 2001)(decision whether to post warnings about rip tides is within discretionary function).

Here, plaintiff alleges that the United States was negligent in hiring and supervising defendant Linton, and in failing to adopt appropriate procedures to protect inmates from sexual assault. I will address each in turn.

Decisions as to hiring and supervision of an employee clearly require the exercise of discretion. Plaintiff points to no mandatory policies of the Bureau of Prisons which cover such decisions. When a personnel officer is reviewing a potential candidate for employment, they must weigh a variety of criteria, including the person's background, skills, qualifications and availability. The decision is not based solely on objective criteria, rather it requires a decision based on a weighing of various factors. Therefore, I hold that decisions concerning negligent hiring, supervision and retention of an employee are sufficiently related to policy judgments so as to fall within the discretionary function exception. See, e.g. Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995)(post office's choice between several different employees requires weighing of individual backgrounds, office diversity, experience and employer intuition, and is of the "nature and quality that Congress intended to shield from tort liability."); Burkhart v. Washington Metro. Area Transit Authority, 112 F.3d 1207, 1217 (D.C. Cir. 1997)(hiring, training and supervision decisions are policy judgments); Larson v. Miller, 76 F.3d 1446, 1456 (8th Cir. 1996)(en banc)(decision to hire/retain bus driver who touched deaf child in vaginal area,

even after complaints from the student as to improper behavior, shielded by discretionary function).

I turn now to the question concerning the implementation of policies at FCI Tallahassee. It is clear that any decisions concerning what policies and procedures to implement in running a prison will involve some element of judgement or choice. Administrators must identify a goal and various methods they can use to meet the goal, and make a choice from the varying options as to which policy or practice would best meet their needs. They will modify policies as necessary in order to meet the identified goals.

Federal statute sets out the duty of care owed to federal prisoners. <u>See</u> 18 U.S.C.§4042[1], <u>United States v. Muniz</u>, 374 U.S. 150, 164-5 (1963). Courts have held that under §4042, federal prison officials have a duty to exercise "ordinary diligence to keep prisoners safe and free from harm." <u>Cowart v. United States</u>, 617 F.2d 112, 116 (5th Cir. 1976).

Even if §4042 imposes a general duty of care upon the Bureau of Prisons to safeguard prisoners, the Bureau of Prisons "retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." <u>Cohen v. United States</u>, 151 F.3d

---

[1]The statute provides in pertinent part:
The Bureau of Prisons, under the direction of the Attorney General, shall–
(1) have charge of the management and regulation of all Federal penal and correctional institutions;
(2) provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offense against the United States, or held as witnesses or otherwise;
(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offense against the United States.

18 U.S.C. §4042(a).

11

1338, 1342 (11th Cir.1998). As stated by the Seventh Circuit in <u>Calderon v. United States</u>, "While it is true that this statue sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." <u>Id.</u>, 123 F.3d 947, 950 (7th Cir. 1997). <u>See also</u>, <u>Montez v. United States</u>, 359 F.3d 392, 396 (6th Cir. 2004)(discretionary function protects Bureau of Prisons from liability in inmate death).

It is clear that decisions concerning what policies to implement fall squarely within the type of behavior that Congress intended to shield with this exception. In order to overcome the assertion by the government, plaintiff must demonstrate that the decision is not based in a "policy consideration." <u>See</u> <u>Gaubert</u>, 499 U.S. at 324-5. By the very structure of the allegation, plaintiff concedes she is alleging proper *policies were not implemented*. I therefore find that the decision of the United States concerning what policies to implement at FCI Tallahassee to provide for the protection of inmates is covered by the discretionary function exception.

The discretionary function exception applies even if there is an abuse of discretion. 28 U.S.C. § 2680(a). <u>Dickerson Inc., v. United States</u>, 875 F.2d 1577, 1581 (11th Cir. 1989). Thus, even if the decisions concerning Linton's employment or the policies to implement were in error, this Court is without jurisdiction to review those choices.

Because I find the United States is shielded from liability on the negligence claim due to the discretionary function exception, it is not necessary for me to address the elements of a negligence claim under Florida law.

An offshoot of negligent hiring or retention can be whether there is liability grounded

12

upon actual or apparent agency. To recover under a theory of vicarious liability such as actual or apparent agency, it must be shown that the agent or apparent agent's conduct was motivated, at least in part, by the purpose of serving the employer. Perez v. Zazo, 498 So.2d 463, 465 (Fla. 3d DCA 1986). As I have previously determined that Officer Linton was not within the scope of his employment and that his actions in engaging in sexual intercourse with plaintiff did not serve any purpose of his employer, I find that all allegations grounded in agency theory are without merit.

Finally, 28 U.S.C. §1346(b) provides that the United States can be sued in U.S. District Court for allegations of loss or damage to personal property or personal injury caused by the negligence of its employees acting in the scope of their employment. This waiver of immunity does not apply, however, to claims "arising out of assault [and] battery" and other intentional torts specified in the statute unless the claims involve the "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. §2680(h)[2]. The statute defines such person as "any officer of the United States who is empowered by law to execute

---

[2]The relevant portion of this statute reads as follows:

The provisions of this chapter and section 1346(b) of this title shall not apply to–
...
(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, that with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For purpose of this subsection, "investigative or law enforcement officer" means any office of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h).

searches, to seize evidence, or to make arrests for violations of Federal law." Id. There is no dispute that Linton was a "law enforcement officer" under the terms of the statute.

The question becomes whether plaintiff's allegations of sexual assault is one "arising out of assault [and] battery" with respect to the "acts or omissions of a ... law enforcement officer" such that she may bring the claims against the United States under the FTCA. 28 U.S.C. §2680(h).

The government argues that the intent of the so called "law enforcement exception" to section 2680(h) should apply only when the federal official acts in his investigative or law enforcement capacity. While that is a novel argument in this circuit, I find it unnecessary to resolve at this time. The FTCA clearly provides that no action may be maintained against the United States for the torts of federal law enforcement officers unless the officers were acting within the scope of their employment at the time of the alleged torts. 28 U.S.C. § 1346(b)(1). Since I find that Linton was not within the scope of his employment at the time of the sexual assault on plaintiff, it is unnecessary for me to reach this argument.

Respectfully submitted,

GREGORY R. MILLER
United States Attorney


 s/ Robert D. Stinson
ROBERT D. STINSON
Assistant U.S. Attorney
Fla. Bar No. 319406
111 North Adams St., 4th Floor
Tallahassee, Florida 32301
850/942-8430

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing was filed electronically on this 5th day of August, 2004, and that James V. Cook and Gary L. Printy, Attorneys for Plaintiff, are registered to be notified by the CM/ECF electronic mail system.

                                                s/ *Robert D. Stinson*
                                                Attorney